**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GREGORY TUTTLE** and **CONNIE TUTTLE**, his wife, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Civil Action No. 14-164 |
| v. | ) ) | |
| **TREVOR WINGARD**, individually and in his capacity as Warden of the Allegheny County Jail; **DANA PHILLIPS**, individually and in her official capacity as Chief Operating Officer of Allegheny Correctional Health Services, Inc.; **VIRGINIA COOK**, Executrix of the Estate of **BRUCE DIXON, M.D.**, individually and with respect to **BRUCE DIXON'S** official capacity as Director of the Allegheny Health Department; **ALLEGHENY COUNTY HEALTH DEPARTMENT; ALLEGHENY CORRECTIONAL HEALTH SERVICES, INC.; ALLEGHENY COUNTY**; and **DAN ONORATO**, individually, and in his capacity as County Executive of Allegheny County, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | District Judge Bissoon<br><br>Magistrate Judge Lenihan<br><br><br><br><br><br>ECF Nos. 8, 10, 14 |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss at ECF No. 14 filed by

Allegheny County, Allegheny Health Department, Dan Onorato and Trevor Wingard be granted

in part and denied in part. It should be denied as it relates to the Eighth Amendment claim. It

should be granted as it relates to the following: the official and individual capacity claims against

Defendants Onorato and Wingard; the claims against the Allegheny Health Department; Fifth Amendment claims, and the state negligence claims against Allegheny County and its officials Wingard and Onorato. It should be granted without prejudice to Plaintiffs filing an amended complaint as to the municipal liability claim. If Plaintiffs fail to amend the municipal liability claim in the time allotted by the District Judge, this Court recommends that the municipal liability claim against Allegheny County be dismissed with prejudice.

It is also recommended that the Motion to Dismiss at ECF No.10 filed by Virginia Cook be granted in its entirety.

Finally, it is recommended that the Motion to Dismiss at ECF No. 8 filed by Allegheny Correctional Health Services, Inc., Dana Phillips, and Bruce Dixon in his capacity as Chair of the Board of Directors of Allegheny Correctional Health Services, Inc. be denied in part and granted in part. The Motion should be denied as it relates to the following: state law negligence claims against ACHS and its officials Phillips and Dixon; § 1983 individual capacity claims against Phillips; and punitive damages. The Motion should be granted as it relates to the following: Fifth Amendment claims; Fourteenth Amendment claims; § 1983 official capacity claims against Phillips and Dixon; § 1983 individual capacity claims against Dixon; and any state medical malpractice claims. The Motion should be granted without prejudice to Plaintiffs filing an amended complaint as to the *Monell* claim. If Plaintiffs fail to amend the *Monell* claim in the time allotted by the District Judge, this Court recommends that the *Monell* claim against ACHS be dismissed with prejudice.

## II. REPORT

### A. <u>FACTS</u>

Plaintiffs, Gregory Tuttle ("Plaintiff") and his wife, Connie Tuttle (collectively "Plaintiffs") bring this action pursuant to 42 U.S.C. § 1983. Plaintiffs also include supplemental state law claims, including a loss of consortium claim by wife Connie Tuttle.

In 1994, Plaintiff underwent surgery for a right hip implant. (ECF No. 1-2 at ¶ 37.) In November of 2011, Plaintiff was an inmate at the Allegheny County Jail ("ACJ"). (ECF No. 1-2 at ¶¶ 34, 36.) Plaintiff avers that the above-captioned Defendants were aware of his previous hip implant procedure. (ECF No. 1-2 at ¶ 37.)

In November 2011, while working in the jail kitchen, Plaintiff slipped and fell, injuring his right side and hip. (ECF No. 1-2 at ¶¶ 35-36.) Plaintiff avers that prior to this slip and fall, he had not experienced any difficulty with his right hip. (ECF No. 1-2 at ¶ 38.)

Plaintiff reported the fall to his direct kitchen supervisor, and completed his shift in the kitchen that day. (ECF No. 1-2 at ¶ 39.) Plaintiff avers that overnight, his pain intensified. (ECF No. 1-2 at ¶ 40.) Plaintiff was seen in the infirmary the next day, prescribed Motrin, and told to stay off his feet. (ECF No. 1-2 at ¶ 40.) In the following days and weeks, Plaintiff's pain "continued to intensify" and he "could hardly walk." (ECF No. 1-2 at ¶ 41.) Plaintiff was physically unable to leave his cell and his meals were brought to him by his cellmate. (ECF No. 1-2 at ¶ 42.)

Plaintiff avers that from this time until the time of his release later that month, he submitted written sick call requests, and verbally requested to guards and medical personnel, including the triage nurse, that he be examined because his condition was worsening. (ECF No.

1-2 at ¶¶ 43-44.)  In response, Plaintiff was told either that he would be seen, or that he did not

need to be seen.  (ECF No. 1-2 at ¶ 45.)

Plaintiff alleges that at this time and up to the time he was released from the ACJ, a

"lump" the size of an egg developed on his right hip, which he reported to the guards and

medical personnel.  (ECF No. 1-2 at ¶ 46.)  Plaintiff continued to send multiple written requests

to see a doctor.  (ECF No. 1-2 at ¶ 47.)  Plaintiff avers that he learned from a triage nurse that

each time he submitted a written request to see a doctor, he would lose his place in line and his

request would be placed on the bottom of the list.  (ECF No. 1-2 at ¶ 48.)  He further avers that

sick call requests are routinely left uncollected by medical personnel and that sick call requests

are routinely ignored and left undocumented.  (ECF No. 1-2 at ¶¶ 49-50.)  Further, Plaintiff

alleges that medical personnel employed a practice of failing to answer the phone in the jail

infirmary in an effort to not address inmate medical needs.  (ECF No. 1-2 at ¶ 51.)

Plaintiff states that despite his requests and the worsening of his condition, "he was not

seen by a medical doctor and when he was seen, he was prescribed ineffective medication[:]

Tylenol and a cane."  (ECF No. 1-2 at ¶ 55.)

Plaintiff was released from the ACJ on November 22, 2011 and was seen at the Forbes

Regional Medical Center on November 24, 2011.  (ECF No. 1-2 at ¶¶ 56, 58.)  On November 25,

2011, Plaintiff underwent surgery[1] and "was diagnosed post operatively with a deep infection,

right total hip."  (ECF No. 1-2 at ¶¶ 58-59.)  Plaintiff was treated with intravenous antibiotic

therapy with the surgical site left open.  (ECF No. 1-2 at ¶¶ 60-61.)  Thereafter, Plaintiff has had

multiple surgical procedures for a "complex reconstruction of his hip following infection."  (ECF

No. 1-2 at ¶ 62.)

---

[1] Plaintiff avers that he "was brought to the operating room for an incision and draining of the abscess, removal of
total hip components and deep hardware, insertion of antibiotic space using a biomet state I select hip space with a
neck offset and ball."  (ECF No. 1-2 at ¶ 58.)

Finally, Plaintiff avers that "in approximately 2010, Defendants, as well as other Allegheny County officials, including auditors from the Allegheny County government, audited the medical records at the Allegheny County jail, specifically with regard to the costs of outside medical trips. These officials concluded that outside trips to medical facilities be reduced for financial reasons." (ECF No. 1-2 at ¶ 29.) Plaintiff also alleges that "Defendants had a policy or custom to deliberately withhold medical attention in an effort to hold down costs occasioned by the need for outside medical attention." (ECF No. 1-2 at ¶ 27.) Specifically, Plaintiff states that "Defendant Phillips instituted a policy requiring her approval for all outside medical care in an effort to implement the policy of the Defendants to hold down medical costs even if physicians employed by Allegheny Correctional Health Services, Inc. would recommend outside evaluation, care and treatment at outside facilities." (ECF No. 1-2 at ¶ 31.) As a consequence, according to Plaintiff, "outside medical trips were substantially decreased which had the effect of discouraging doctors and other employees of Allegheny Correctional Health Services, Inc. from properly evaluating and sending inmates to outside medical facilities for evaluation and treatment." (ECF No. 1-2 at ¶ 32.)

### B.  LEGAL STANDARD

Recently, the United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although

> "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).


C. ANALYSIS

1. **Motion to Dismiss filed by Defendants Allegheny County; Allegheny Health Department; Allegheny County Executive, Dan Onorato; and the Warden of ACJ, Trevor Wingard  (ECF No. 14)**


Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States.  *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law.  *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

a. <u>COUNTS I, IV, VII, and XI: Official and Individual Capacity Claims against Wingard and Onorato</u>

Plaintiffs concede that the official capacity claims against the individual Defendants Onorato and Wingard should be dismissed because these official capacity claims are, in effect, claims against Allegheny County. Therefore, it is respectfully recommended that Defendants' Motion to Dismiss the claims against Defendants Onorato and Wingard in their official capacities at Counts I, IV, VII, and XI be granted.

As to the claims against Wingard and Onorato in their individual capacities, these counts must also be dismissed. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)). A plaintiff must aver this personal involvement through allegations of participation, personal direction, or actual knowledge and acquiescence. *Id.* These allegations "must be made with appropriate particularity." *Id.* Here, Plaintiff has set forth no averments as to the personal participation, direction, or actual knowledge and acquiescence by Defendants Wingard and Onorato in the events surrounding Plaintiff's alleged constitutional injury. Instead, the averments against Wingard and Onorato sound in vicarious liability, a theory of liability that has no place in § 1983 jurisprudence. *See Rode*, 845 F.2d at 1207. Plaintiffs aver only that these individual Defendants were somehow involved in the making of a policy or custom because they were in some way involved in a 2010 audit of the medical records at the ACJ that "concluded that outside medical trips to medical facilities be reduced for financial reasons." (ECF No. 1-2 at ¶ 29.) Although it is not a violation of the United States Constitution to attempt to hold down medical costs, constitutional protections may be implicated when cost cutting measures result in policies to defer necessary medical treatment, and as a result of the

deferral, inmates experience undue pain and suffering. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Plaintiffs aver no facts to suggest that Wingard, as the warden of the ACJ, and Onorato, as Allegheny County Executive, were aware or had reason to believe, that Plaintiff's necessary medical treatment was allegedly delayed due to the fact that he was soon to be released, and as a result thereof, endured undue pain and suffering. As concluded by the United States Court of Appeals for the Third Circuit in *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004), "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [] will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236. Plaintiffs include no facts in their 160-paragraph Complaint to even remotely suggest that these Defendants were aware, or had reason to believe, that cost cutting measures resulting in the alleged deferral of necessary medical treatment and concomitant pain and suffering were being implemented at the ACJ. Any attempt to amend these allegations under the facts as presented by Plaintiffs would be futile.[2] Therefore, Defendants' Motion to Dismiss the individual capacity claims against Wingard and Onorato at Counts I, IV, VII, and XI should also be granted.

      b.   <u>COUNTS VI, XIII, and XX: Allegheny County Health Department</u>

Plaintiffs concede that the claims against the Allegheny Health Department are redundant and that the Health Department should be dismissed as a Defendant. (ECF No. 19 at 1.) Counts VI, XIII, and XX should be dismissed with prejudice. Therefore, Defendants' Motion to Dismiss the Allegheny Health Department as a Defendant at Counts VI, XIII, and XX should be granted.

---

[2] The United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to Fed. R. Civ. P. 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008).

c. Eighth Amendment Claim

Defendants argue that Plaintiffs have failed to allege a plausible Eighth Amendment claim because Plaintiff received medical treatment—Tylenol, Motrin, and a cane—and "allegations of malpractice or disagreement as to the proper medical treatment do not support a claim of an [E]ight [A]mendment violation." (ECF No. 15 at 7.)

In *Estelle v. Gamble*, the United States Supreme Court noted that the most elementary principles underlying Eighth Amendment constitutional jurisprudence "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." 429 U.S. 97, 103 (1976). The *Estelle* Court concluded that the Eighth Amendment prohibits the deliberate indifference to serious medical needs of prisoners. *Id.* at 104. The Court noted that a cause of action under § 1983 is thereby established "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted). The United States Court of Appeals for the Third Circuit has acknowledged that "'if necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out.'" *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting *Ancata v. Prison Health Serv., Inc.,* 769 F.2d 700, 704 (11th Cir. 1985)). *See Brooks v. Kyler*, 204 F.3d 102, 105 n.4 (3d Cir. 2000) (quoting *Lanzaro,* 834 F.2d at 346) (delay of medical care will state an Eighth Amendment claim where the temporary denial exposes inmate "to undue suffering or the threat of tangible residual injury.").

In *Farmer v. Brennan*, the United States Supreme Court clarified its meaning of the term "deliberate indifference." 511 U.S. 825 (1994). In *Farmer*, the Court held as follows:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38. The *Farmer* Court also discussed its reasoning in *Estelle*, noting that negligence in diagnosing or treating the medical conditions of prisoners will not rise to the level of an Eighth Amendment violation. *Farmer*, 511 U.S. at 835 (quoting *Estelle*, 429 U.S. at 106).

A plaintiff must also demonstrate a medical need that is objectively "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Lanzaro*, 834 F.2d at 347.

Here, Plaintiffs have alleged a medical need that is objectively serious—an injury to an artificial hip developing into a deep infection requiring intravenous antibiotic therapy, and eventually, a complete replacement of the artificial hip.

Plaintiffs have also alleged that even though Plaintiff received some medical attention, necessary medical treatment was delayed in order to hold down medical costs, causing extreme pain and exacerbation of the injury he sustained at the time of the fall. Plaintiff's initial injury developed into a deep infection that eventually necessitated treatment with intravenous antibiotics. Plaintiffs also aver that Defendants were aware that Plaintiff had undergone a right hip replacement before he was incarcerated. Plaintiffs' averments suggest that because he was

due to be released within a few weeks, treatment with Tylenol, Motrin, and a cane, even in the face of the visible "lump" that developed on his hip, was an attempt to "put off" necessary and expensive medical treatment until Plaintiff was released from the ACJ. This necessary medical treatment, according to Plaintiffs, was continually denied, even though Plaintiff repeatedly submitted written and verbal requests to be seen in the infirmary. Clearly, Plaintiffs have averred a plausible violation of the Eighth Amendment.

Therefore, it is respectfully recommended that Defendants' Motion to Dismiss Plaintiffs' Eighth Amendment claim be denied.

d. *Monell* claims

Defendants argue that Plaintiffs have failed to allege a policy, practice or custom that violated any of Plaintiff Gregory Tuttle's constitutional rights. (ECF No. 15 at 8.)

In *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior. Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. *Id*.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. *Id.* at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *quoted in*, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. *Andrews*, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850-51.

Here, as to the County Defendants, Plaintiffs aver that the County and the ACJ had a custom, practice, or pattern "to continually move a medical complaint or a sick call request for medical services made by an inmate to the bottom of any list of priority to be seen by a physician each time a new request to be seen was made by an inmate." (ECF No. 1-2 at ¶ 26.) Plaintiffs further aver that this custom included the deliberate withholding of "medical attention in an effort to hold down costs occasioned by the need for outside medical attention." (ECF No. 1-2 at ¶ 27.) This custom also included the failure to conduct a complete evaluation of those inmates who would likely require outside medical attention, and the practice of cancelling inmate medical trips if there were too many trips scheduled on a particular day. (ECF No. 1-2 at ¶¶ 28,

30.)  The impetus for this custom or practice, according to Plaintiff, was the 2010 audit of ACJ medical records by the County, and its conclusion that outside trips to medical facilities be reduced in an effort to control medical costs.  (ECF No. 1-2 at ¶ 29.)  As noted above, efforts to reduce medical costs, standing alone, does not state a constitutionally cognizable injury.  The Complaint read in its entirety, however, suggests that in delaying Plaintiff's outside medical trip in light of his imminent release, Defendants knowingly caused Plaintiff undue pain and suffering, as well as exacerbation of his injury.

Although Plaintiffs have sufficiently averred the custom or practice at issue in this case, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The Plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).  That is, Plaintiffs must aver that the municipal action was taken with the requisite scienter to establish an Eighth Amendment violation: deliberate indifference.  *See id.*  Plaintiffs have failed to aver other instances besides those relating to Plaintiff that would have put County decision-makers *on notice* that this practice was being used to delay necessary medical treatment for nonmedical reasons, causing undue pain and suffering.  That is, Plaintiffs have failed to allege *specific facts demonstrating that the County Defendants were on notice that a constitutional violation like the one allegedly sustained by Plaintiff could occur*, *and County decision-makers acted with deliberate indifference to that risk.* *Berg*, 219 F.3d at 276 (emphasis added).

Therefore, it is respectfully recommended that the County Defendants' Motion to Dismiss Plaintiffs' municipal liability claim be granted without prejudice to Plaintiffs filing an amended complaint containing the necessary averments of fact as discussed above.  If Plaintiffs

fail to amend this municipal liability claim in the time allotted by the District Judge, the

undersigned recommends that Plaintiffs' municipal liability claim against Allegheny County be

dismissed with prejudice.[3]

e.  Fifth Amendment claim

Plaintiffs concede that they may not maintain a Fifth Amendment claim against these

Defendants.  (ECF No. 19 at 1.)  Therefore, it is respectfully recommended that Defendants'

Motion to Dismiss be granted as it relates to Plaintiffs' Fifth Amendment claim.

f.  COUNT XIX: Negligence Claims against Allegheny County

Defendant Allegheny County contends that Plaintiffs' negligence claims against it are

barred by the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA").  Under the

PSTCA, local agencies and their employees are given broad tort immunity.  The Act provides

that "no local agency shall be liable for any damages on account of any injury to a person or

property caused by any act of the local agency or an employee thereof or any other person."  42

Pa. Cons. Stat. § 8541.  There are eight (8) specific acts excepted from this immunity that are not

applicable here.[4]  In addition, municipal employees are generally immune from liability if the

complained of acts were committed within the scope of their employment.  42 Pa. Cons. Stat. §

8545.  The PSTCA defines an employee as any person who is acting or has acted on behalf of a

---

[3] The County Defendants have not moved to dismiss Plaintiffs' averments concerning failure to train.
[4] 1) the operation of a motor vehicle in possession or control of a local agency; 2) the care, custody or control of personal property in the possession or control of a local agency; 3) the care, custody or control of real property; 4) a dangerous condition created by trees, traffic controls, or street lights; 5)a dangerous condition of utility service facilities; 6) a dangerous condition of streets; 7) a dangerous condition of sidewalks; 8) the care, custody, or control of animals in the possession or control of a local agency.  42 Pa. Cons. Stat. § 8542.

government unit, whether compensated or not, including any elected or appointed officers. 42 Pa. Cons. Stat. § 8501.

Hence, Plaintiffs' negligence claims against Allegheny County, Wingard and Onorato must necessarily fail. Allegheny County is a local agency as defined by the PSTCA. *See Spiker v. Allegheny County Bd. of Probation and Parole*, 920 F. Supp.2d 580, 612-13 (W.D. Pa. 2013). The negligence counts of the Complaint describe the individuals as acting within the scope of their employment. Therefore, it is respectfully recommended that Defendant Allegheny County's Motion to Dismiss Plaintiffs' negligence claims against Allegheny County in Count XIX be granted. Further, the negligence claims against its officials Wingard and Onorato in Counts XV and XVIII should also be dismissed with prejudice in their entirety.[5]


2. **Motion to Dismiss filed by Defendants Virginia Cook, Executrix of the Estate of Bruce Dixon, M.D., individually, and with respect to Bruce Dixon's official capacity as Director of the Allegheny County Health Department (ECF No. 10)**

   a. State law claims against Dixon in Count XVII

Defendant argues that the state law negligence claims against Dixon in Count XVII must be dismissed because he has immunity under the PSTCA.

As noted above, Plaintiffs concede that the claims against the Allegheny Health Department are redundant because Allegheny County is also a named Defendant. Therefore, this Court will recommend that the Allegheny Health Department be dismissed as a Defendant. Consequently, Dixon, as an official of Allegheny County, is protected by immunity under the PSTCA for Plaintiffs' claims sounding in negligence. The negligence claims in Count XVII relate to Dixon in his capacity as director of the Allegheny Health Department. As discussed

---

[5] Any attempt to amend these negligence claims would be futile as a matter of law in light of the immunity afforded pursuant to the PSTCA.

above, he is considered an official of Allegheny County, a local agency protected by the PSTCA. All of Plaintiffs' averments in Count XVII relate to Dixon's functions as the Director of the Allegheny County Health Department and immunity under the PSTCA applies. Therefore, Defendant's Motion to Dismiss Count XVII against Dixon should be granted.[6]

     b.   <u>COUNTS III and X: Vicarious Liability claims against Dixon</u>

Defendant contends that Counts III and X must be dismissed because the averments against Defendant Dixon, individually, and in his official capacity as Director of the Allegheny County Health Department sound in vicarious liability only. In response, Plaintiff concedes that "there are no vicarious claims," and that he "may not maintain official capacity claims against the individual defendants." (ECF No. 20 at 1.)

As noted above, a § 1983 plaintiff must aver a defendant's personal involvement through allegations of participation, personal direction, or actual knowledge and acquiescence. *Rode*, 845 F.2d at 1207. Here, Plaintiffs have set forth no averments as to Defendant Dixon's personal participation, direction, or actual knowledge and acquiescence in the events surrounding Plaintiff's alleged constitutionally cognizable harm. As discussed above regarding the claims against the individual County Defendants, Plaintiffs have averred no facts to suggest that Defendant Dixon, in his capacity as Director of the Allegheny County Health Department, was aware or had reason to believe that Plaintiff's necessary medical treatment was allegedly delayed in an effort to hold down medical costs, and as a result thereof, endured undue pain and suffering. In fact, the Court agrees with Defendant's contention that Plaintiffs' averments as to Defendant Dixon sound in vicarious liability only.

---

[6] Any attempt to amend these negligence claims would be futile as a matter of law in light of the immunity afforded pursuant to the PSTCA.

The Court further agrees that the official capacity claims against Dixon, are in effect, claims against the County, and should be dismissed. Therefore, it is respectfully recommended that Count III and Count X against Defendant Dixon in his individual and official capacity as Director of the Allegheny County Health Department be dismissed.[7] Defendant's Motion to Dismiss at ECF No. 10 should be granted in its entirety.

**3. Motion to Dismiss filed by Defendants Dana Phillips, Chief Operating Officer of Allegheny Correctional Health Services, Inc.; Allegheny Correctional Health Services, Inc.; and Estate of Bruce Dixon insofar as the allegations relate to Dixon in his capacity as Chair of the Board of Directors of Allegheny Correctional Health Services, Inc. (ECF No. 8)**

a. <u>Individual and Official Capacity Claims against Phillips and Dixon</u>

First, the Court notes that Plaintiffs have conceded that the claims against these individual Defendants in their official capacities are redundant of the claims against Allegheny Correctional Health Services, Inc. ("ACHS"). (ECF No. 17 at 5 n.1; ECF No. 18 at 1.) Therefore, it is respectfully recommended that the claims against Phillips and Dixon in their official capacities be dismissed with prejudice.

Next, Defendants argue that Plaintiffs' § 1983 claims against Defendants Phillips and Dixon in their individual capacities must be dismissed because Plaintiffs have not averred that they were personally involved in the delivery of Plaintiff's medical care. (ECF No. 9 at 8.) Plaintiffs respond that the individuals' liability is premised upon their role as policy makers, not on any actions they may or may not have taken with regard to Plaintiff's healthcare. (ECF No. 17 at 5.)

---

[7] Any attempt to amend these allegations under the facts as presented by Plaintiffs would be futile.

As to Defendant Phillips, Plaintiffs aver that she "instituted a policy requiring her approval for all outside medical care in an effort to implement the policy of Defendants to hold down medical costs even if physicians employed by Allegheny Correctional Health Services, Inc. would recommend outside evaluation, care and treatment at outside facilities." (ECF No. 1-2 at ¶ 31.) Plaintiffs continue that "[f]ollowing the implementation of this policy[,] particularly through the edicts of Defendant Phillips[,] outside medical trips were substantially decreased which had the effect of discouraging doctors and other employees of Allegheny Correctional Health Services, Inc. from properly evaluating and sending inmates to outside medical facilities for evaluation and treatment." (ECF No. 1-2 at ¶ 32.)

These averments reflect specific action taken by Phillips that allegedly led to an Eighth Amendment violation: the delay of necessary medical treatment for nonmedical reasons, resulting in undue pain and suffering. Plaintiffs aver that all named individual Defendants were somehow involved in this custom or practice because they were in some way involved in a 2010 audit of the medical records at the ACJ that "concluded that outside medical trips to medical facilities be reduced for financial reasons." (ECF No. 1-2 at ¶ 29.) Although it is not a violation of the United States Constitution to attempt to hold down medical costs, constitutional protections may be implicated when cost cutting measures result in practices by an ACHS official to defer necessary medical treatment because an inmate is due to be released, and as a result of the deferral, the inmate experiences undue pain and suffering and exacerbation of injuries.

Conversely, as to Defendant Dixon in his capacity as Chair of the Board of Directors of ACHS, Plaintiff makes no averments as to actions specifically taken by him, other than some involvement in a policy to hold down medical costs at the ACJ. There are no averments that he

or any of the other named individual Defendants (other than Phillips) had any involvement in practices that gave rise to custom in this case: the delay of necessary medical treatment for other than medical reasons resulting in undue pain and suffering.

Therefore, it is respectfully recommended that the ACHS Defendants' Motion to Dismiss Defendant Phillips in her individual capacity be denied. It is further recommended that the Motion to Dismiss the claims against Defendant Dixon in his individual capacity as Chair of the Board of Directors of ACHS be granted.[8]

b. *Monell* claims

As noted above, in order to make out a claim for *Monell* liability, Plaintiffs must allege facts demonstrating that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. *Berg*, 219 F.3d at 276. Here, Plaintiffs allege that ACHS, through its Chief Operating Officer, Phillips, instituted a custom or practice "requiring her approval for all outside medical care in an effort to implement the policy of Defendants to hold down medical costs even if physicians employed by Allegheny Correctional Health Services, Inc. would recommend outside evaluation, care and treatment at outside facilities." (ECF No. 1-2 at ¶ 31.) Plaintiffs further allege that as a result of this custom or practice, "outside medical trips were substantially decreased which had the effect of discouraging doctors and other employees of Allegheny Correctional Health Services, Inc. from properly evaluating and sending inmates to outside medical facilities for evaluation and treatment." (ECF No. 1-2 at ¶ 32.)

---

[8] Any attempt to amend these allegations under these facts as to Defendant Dixon in his capacity as Chair of the Board of Directors of ACHS would be futile.

Here, Plaintiffs' allegations fail to set forth facts demonstrating that *ACHS was aware* of Phillips' practice requiring her preapproval for outside medical trips, the chilling effect it allegedly had on doctors and other employees of ACHS, and the constitutional injury or risk thereof that inmates at the ACJ would endure undue pain and suffering and exacerbation of injuries as a result of the delay of necessary medical care. Plaintiffs must aver facts showing that ACHS knew that necessary medical treatment would be delayed for nonmedical reasons, resulting in undue pain and suffering or exacerbation of injuries to inmates at the ACJ, and that it was deliberately indifferent to that risk by allowing the practice to continue in light of its awareness of the risk.

Therefore, it is respectfully recommended that the ACHS Defendants' Motion to Dismiss Plaintiffs' *Monell* claim be granted without prejudice to Plaintiffs filing an amended complaint to include facts that the ACHS Defendants were on notice that a constitutional violation like the one allegedly sustained by Plaintiff could occur, and ACHS decision-makers acted with deliberate indifference to that risk. If Plaintiffs fail to amend this claim in the time allotted by the District Judge, the undersigned recommends that Plaintiffs' *Monell* claim be dismissed with prejudice.[9]

c. Fifth Amendment claims

Plaintiffs concede that they may not maintain a Fifth Amendment claim against these Defendants. (ECF No. 18 at 1.) Therefore, it is respectfully recommended that Defendants' Motion to Dismiss be granted as it relates to Plaintiffs' Fifth Amendment claim.

---

[9] The ACHS Defendants have not moved to dismiss Plaintiffs' averments concerning failure to train.

d. Fourteenth Amendment claims

Defendants argue that because Plaintiffs have pled claims pertaining to Plaintiff Gregory Tuttle's medical care pursuant to the Eighth Amendment, Plaintiffs' Fourteenth Amendment claims premised on the same facts are improper and must be dismissed.

Because the United States Supreme Court is reluctant to expand the concept of substantive due process, the Court has held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, and not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)) (other citation and internal quotation marks omitted).

Here, the Eighth Amendment provides an explicit textual source of constitutional protection regarding the delivery of medical care to incarcerated persons. Therefore, Defendants' Motion to Dismiss Plaintiffs' Fourteenth Amendment claims should be granted.[10]

e. State law claims against ACHS. and its officials Phillips and Dixon in his capacity as Chair of the Board of Directors of ACHS

First, the Court notes that Plaintiffs concede that they are not raising claims of state medical negligence against the Defendants. (ECF No. 18 at 1.) Therefore, Defendants' Motion to Dismiss any state claims sounding in medical negligence should be granted.

ACHS further argues that it is a local agency; therefore, ACHS and its officials, Phillips and Dixon, are entitled to immunity pursuant to the PSTCA. (ECF No. 9 at 12-14, 17-22.)

---

[10] Any attempt to amend would be futile as a matter of law.

As noted above, the PSTCA provides that, except for certain exceptions, local agencies are not liable "for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. C.S. § 8541. Employees of local agencies are entitled to the same immunity for actions taken within the scope of their employment.  42 Pa. C.S. § 8545.

Defendants cite to the Pennsylvania Supreme Court's decisions in *Sphere Drake Insurance Co. v. Philadelphia Gas Works*, 782 A.2d 510 (Pa. 2001), and *Christy v. Cranberry Volunteer Ambulance Corps.*, 856 A.2d 43 (Pa. 2004) as providing the appropriate test for determining whether ACHS fits within the definition of a "local agency." These cases make clear that the test for determining whether a non-profit corporation that performs governmental functions qualifies as a "local agency" within the ambit of the PSTCA involves addressing, inter alia, the following issues:

> [u]pon remand, in assessing if Cranberry Ambulance is a local agency for purposes of immunity under the Tort Claims Act, the court's examination shall include, but not be limited to, determining whether: (1) there is confirmation of Cranberry Ambulance's status as a non-profit corporation; (2) the ambulance company was incorporated and created by a political subdivision; (3) Cranberry Ambulance assists Cranberry Township in meeting the needs of its citizens; (4) Cranberry Township appoints the entity's Board of Directors; (5) Cranberry Township exercises substantial control over Cranberry Ambulance; (6) the entity's assets would vest in the Township, should the company be dissolved; (7) Cranberry Ambulance's employees participate in any Township benefit plans exclusively reserved to Township employees; (8) the ambulance company's sole source of income is the Township; and (9) the Township indemnifies and holds harmless employees and officers and directors of Cranberry Ambulance from claims and liabilities arising in connection with provision of services. Only after considering and weighing these factors will the court on remand be able to determine whether or not Cranberry Ambulance is a local agency by virtue of its relationship with the Township, and, hence, immune form tort liability.

*Christy*, 856 A.2d at 53-54 (footnote omitted). Clearly, the analysis in determining whether a particular entity qualifies as a "local agency" is a fact-intensive inquiry. Given the legal standard on a motion to dismiss pursuant to Rule 12(b)(6), and the intensive factual inquiry required by the Pennsylvania Supreme Court in determining whether an entity qualifies as a "local agency" for purposes of the PSTCA, the Court must deny the motion to dismiss on this issue so that the parties may develop the record with respect to these factors. *See*, *e.g.*, *Christy*, 856 A.2d at 44 (we "remand the matter for the parties to introduce evidence regarding whether the ambulance company is a 'local agency,' pursuant to our analysis in *Sphere Drake Insurance Company v. Philadelphia Gas Works*, 566 Pa. 541, 782 A.2d 510 (2001).").

Therefore, it is respectfully recommended that the Motion to Dismiss the state negligence claims filed by Defendants ACHS, Phillips, and Dixon in his capacity as Chair of the Board of Directors of ACHS be denied.

### f.   Punitive damages

Finally, Defendants move to dismiss Plaintiffs' claim for punitive damages because the Complaint makes no allegations suggesting that Defendants acted willfully and in gross disregard of the rights of Plaintiff. (ECF No. 9 at 22.) At the motion to dismiss stage, the Court makes no judgment about what actually occurred, but Plaintiffs' allegations that Defendant Phillips instituted a custom or practice to delay medical care in an effort to hold down medical costs, and the suggestion that he was "put off" because his release was imminent, resulting in extreme pain and suffering and exacerbating his injuries, states a plausible claim for punitive damages on a motion to dismiss. Therefore, it is respectfully recommended that Defendants' Motion to Dismiss Plaintiffs' claim for punitive damages be denied.

## III.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss at ECF No. 14 filed by Allegheny County, Allegheny Health Department, Dan Onorato and Trevor Wingard be granted in part and denied in part.  It should be denied as it relates to the Eighth Amendment claim.  It should be granted as it relates to the following: the official and individual capacity claims against Defendants Onorato and Wingard; the claims against the Allegheny Health Department; Fifth Amendment claims, and the state negligence claims against Allegheny County and its officials Wingard and Onorato.  It should be granted without prejudice to Plaintiffs filing an amended complaint as to the municipal liability claim.  If Plaintiffs fail to amend the municipal liability claim in the time allotted by the District Judge, this Court recommends that the municipal liability claim against Allegheny County be dismissed with prejudice.

It is also recommended that the Motion to Dismiss at ECF No.10 filed by Virginia Cook be granted in its entirety.

Finally, it is recommended that the Motion to Dismiss at ECF No. 8 filed by Allegheny Correctional Health Services, Inc., Dana Phillips, and Bruce Dixon in his capacity as Chair of the Board of Directors of Allegheny Correctional Health Services, Inc. be denied in part and granted in part.  The Motion should be denied as it relates to the following: state law negligence claims against ACHS and its officials Phillips and Dixon; § 1983 individual capacity claims against Phillips; and punitive damages.  The Motion should be granted as it relates to the following: Fifth Amendment claims; Fourteenth Amendment claims; § 1983 official capacity claims against Phillips and Dixon; § 1983 individual capacity claims against Dixon; and any state medical

malpractice claims. The Motion should be granted without prejudice to Plaintiffs filing an amended complaint as it relates to the *Monell* claim. If Plaintiffs fail to amend the *Monell* claim in the time allotted by the District Judge, this Court recommends that the *Monell* claim against ACHS be dismissed with prejudice.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: November 12, 2014                                      BY THE COURT:




                                                             s/Lisa Pupo Lenihan
                                                             LISA PUPO LENIHAN
                                                             United States Magistrate Judge


cc:     All Counsel of Record
        Via Electronic Mail