IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY TUTTLE, et al., | Civil Action No. 14-164 |
| Plaintiffs, | |
| | Judge Cathy Bissoon |
| v. | Magistrate Judge Lisa Pupo Lenihan |
| ALLEGHENY COUNTY CORRECTIONAL HEALTH SERVICES, INC. and ALLEGHENY COUNTY, | ECF No. 70 |
| Defendants. | |

# REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss at ECF No. 70 filed by Allegheny County be denied.

## II. REPORT

### A. PROCEDURAL BACKGROUND

Plaintiffs, Gregory Tuttle ("Plaintiff") and his wife, Connie Tuttle (collectively "Plaintiffs") bring this action pursuant to 42 U.S.C. § 1983. The original complaint was filed in this court on February 6, 2014, following removal from the Court of Common Pleas of Allegheny County. An Amended Complaint was filed on January 8, 2015.

1

A number of Motions to Dismiss were filed, and certain claims and Defendants were dismissed. See ECF Nos. 41 and 45. Following two requests for continuances by the parties the Initial Case Management Conference was held on September 1, 2015. Following that conference a number of additional Defendants were dismissed by Plaintiff. A status conference took place on November 3, 2015 at which time counsel for Plaintiffs advised that Gregory Tuttle had died. He also advised that he expected a report from a medical expert shortly regarding both the deliberate indifference aspect and the cause of death. That report was provided to Defendants per Court Order, no later than December 3, 2015.[1] Upon receipt of same, on December 9, 2015, Defendant Allegheny County filed a Motion to Dismiss at ECF No. 70. No brief in support was filed.

B. FACTS

In November of 2011, Plaintiff Gregory Tuttle was an inmate at the Allegheny County Jail ("ACJ"). (ECF No. 30 at ¶¶ 43.) In November 2011, while working in the jail kitchen, Plaintiff slipped and fell, injuring his right side and hip. (ECF No. 30 at ¶¶ 44-45.) Plaintiff avers that, although he had a previous right hip implant in 1994, prior to this slip and fall, he had not experienced any difficulty with his right hip. (ECF No. 30 at ¶¶ 46, 47.)

Plaintiff reported the fall to his direct kitchen supervisor, and completed his shift in the kitchen that day. (ECF No. 30 at ¶ 48.) Plaintiff avers that overnight, his pain intensified. (ECF No. 30 at ¶ 49.) Plaintiff was seen in the infirmary the next day, prescribed Motrin, and told to stay off his feet. (ECF No. 30 at ¶ 49.) In the following days and weeks, Plaintiff's pain "continued to intensify" and he "could hardly walk."

---

[1] Plaintiff was also ordered to make a settlement demand by that date. The demand was not made until December 28, 2015.

2

(ECF No. 30 at ¶ 50.) Plaintiff was physically unable to leave his cell and his meals were brought to him by his cellmate. (ECF No. 30 at ¶ 51.)

Plaintiff avers that from this time until the time of his release later that month, he submitted written sick call requests, and verbally requested to guards and medical personnel, including the triage nurse, that he be examined because his condition was worsening. (ECF No. 30 at ¶¶ 52, 53.) In response, Plaintiff was told either that he would be seen, or that he did not need to be seen. (ECF No. 30 at ¶ 54.)

Plaintiff alleges that at this time and up to the time he was released from the ACJ, a "lump" the size of an egg developed on his right hip, which he reported to the guards and medical personnel. (ECF No. 30 at ¶ 55.) Plaintiff continued to send multiple written requests to see a doctor. (ECF No. 30 at ¶ 56.) Plaintiff avers that he learned from a triage nurse that each time he submitted a written request to see a doctor, he would lose his place in line and his request would be placed on the bottom of the list. (ECF No. 30 at ¶ 57.) He further avers that sick call requests are routinely left uncollected by medical personnel and that sick call requests are routinely ignored and left undocumented. (ECF No. 30 at ¶¶ 58-59.) Further, Plaintiff alleges that medical personnel employed a practice of failing to answer the phone in the jail infirmary in an effort to not address inmate medical needs. (ECF No. 30 at ¶ 60.)

Plaintiff states that despite his requests and the worsening of his condition, "he was not seen by a medical doctor and when he was seen, he was prescribed ineffective medication[:] Tylenol and a cane." (ECF No. 30 at ¶ 64.)

Plaintiff was released from the ACJ on November 22, 2011 and was seen at the Forbes Regional Medical Center on November 24, 2011. (ECF No. 30 at ¶ 65.) On

3

November 25, 2011, Plaintiff underwent surgery[2] and "was diagnosed post operatively with a deep infection, right total hip." (ECF No. 30 at ¶¶ 67-68.) Plaintiff was treated with intravenous antibiotic therapy with the surgical site left open. (ECF No. 30 at ¶¶ 60-61.) Thereafter, Plaintiff has had multiple surgical procedures for a "complex reconstruction of his hip following infection." (ECF No. 30 at ¶ 71.)

Finally, Plaintiff avers that "in approximately 2010, Defendants, as well as other Allegheny County officials, including auditors from the Allegheny County government, audited the medical records at the Allegheny County jail, specifically with regard to the costs of outside medical trips. These officials concluded that outside trips to medical facilities be reduced for financial reasons." (ECF No. 30 at ¶ 30.) Plaintiff also alleges that "Defendants had a policy or custom to deliberately withhold medical attention in an effort to hold down costs occasioned by the need for outside medical attention." (ECF No. 30 at ¶ 28.) Specifically, Plaintiff states that "Defendant Phillips instituted a policy requiring her approval for all outside medical care in an effort to implement the policy of the Defendants to hold down medical costs even if physicians employed by Allegheny Correctional Health Services, Inc. would recommend outside evaluation, care and treatment at outside facilities." (ECF No. 30 at ¶ 32.) As a consequence, according to Plaintiff, "outside medical trips were substantially decreased which had the effect of discouraging doctors and other employees of Allegheny Correctional Health Services, Inc. from properly evaluating and sending inmates to outside medical facilities for evaluation and treatment." (ECF No. 30 at ¶ 33.)

---

[2] Plaintiff avers that he "was brought to the operating room for an incision and draining of the abscess, removal of total hip components and deep hardware, insertion of antibiotic space using a biomet state I select hip space with a neck offset and ball." (ECF No. 30 at ¶ 67.)

4

## C. LEGAL STANDARD

Recently, the United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

## III. DISCUSSION

In its Motion to Dismiss Defendant argues that the Amended Complaint does not state the exact date of the fall. It further argues that the medical expert report provided does not causally connect the fall to Plaintiff's infection and/or death, and finally that Plaintiff has failed to make a demand as ordered. Plaintiff responded on December 28, 2015, ECF No. 71, that the Court has previously denied the 12(b)(6) Motion for failure to state a claim filed by Allegheny County, the Monell claims have been sufficiently pled, the date of the fall has been narrowed to November 2011 and was reported to Plaintiff's work supervisor. Plaintiff further argues that the claim is not for a slip and fall but for

deliberate indifference to a serious medical condition so the exact date of the fall is not at issue. The expert medical report provided states that the attention, care and treatment of Plaintiff while incarcerated evidences deliberate indifference to a serious and obvious medical condition and opines that his death can be traced to the "care" he received at the jail. Finally, albeit late, a demand has been provided.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x. 774, 776 (3d Cir. 2009). In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

In addition, Defendant is making an argument that draws in evidence outside of the pleadings, specifically, the medical expert report. The Court may not consider this evidence in a 12(b)(6) Motion. The exact date of the fall is not determinative of the cause of action and that information should be in the possession of Defendant in any event. A demand has now been provided so Plaintiff is no longer in violation of a Court Order.

Viewed in light of the forgoing liberal pleading standards, this Court finds that the allegations of the Amended Complaint, when taken as true, allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged, and that the complaint meets the standards as enunciated in *Twombly* and *Iqbal*. See also, *Fowler*,

578 F.3d at 210, quoting *Iqbal*, 129 S.Ct. at 1948. ("To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged.'"). Moreover, the Court finds that the issue of the sufficiency of the expert report is more properly before the Court on a motion for summary judgment or a Daubert Motion and it would be premature to decide the issue without allowing plaintiff an opportunity to develop the record through the discovery process.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss at ECF No. 70 filed by Allegheny County, be denied.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: Dec. 29, 2015

Lisa Pupo Lenihan
United States Magistrate Judge

Cc: All counsel of record
(Via CM/ECF electronic mail)